UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JASHUA BAPTISTA,<br><br>　　　　Defendant.<br>_____/ | No. CR 10-00050 PJH<br><br>**ORDER DENYING MOTION FOR WRIT OF ERROR AUDITA QUERELA AND NOTICE OF § 2255 OPTIONS** |

　　　　Defendant Jashua Baptista has moved pursuant to 28 U.S.C. § 1651 for a writ of error audita querela, challenging his sentence. Having reviewed defendant's motion and carefully considered his arguments and the relevant legal authority, the court hereby DENIES the motion for writ of error audita querela for the reasons set forth below.

## BACKGROUND

**A.　Prior Judgment and Motion to Vacate Sentence**

　　　　In the indictment filed on January 21, 2010, Baptista was charged with two counts of possession of cocaine with intent to distribute under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) ("Counts I and II"), one count of conspiracy to distribute and to possess with intent to distribute methamphetamine under 21 U.S.C. §§ 846 and 841(b)(1)(A)(vii) ("Count III"), and one count of possession of methamphetamine with intent to distribute under 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii) ("Count IV"). Count III and Count IV each carry a mandatory statutory minimum sentence of 120 months of imprisonment, followed by a mandatory minimum supervised release term of 5 years. On March 3, 2010, Baptista pled guilty to Count IV, and on May 26, 2010, he was sentenced to the mandatory minimum term of

120 months imprisonment.  The same day, on the government's motion and pursuant to a negotiated plea agreement, the remaining charges were dismissed.

Several months after he began serving his sentence, Baptista filed a number of letters and documents pro se, challenging the court's judgment.  On September 7, 2010, the court issued an order to show cause, after construing Baptista's "motion(s) to set aside judgment under Federal Rule of Civil Procedure 60(b)(3)" as one seeking relief under 28 U.S.C. § 2255.  After Baptista filed several additional motions and letters, the court issued an order on September 22, 2010, acknowledging that Baptista appeared to be seeking relief based on the ineffective assistance of his retained counsel Adante Pointer, who allegedly advised defendant that if he pled guilty pursuant to a negotiated plea agreement, he could receive a sentence of less than 10 years, notwithstanding the statutory mandatory minimum.  The court determined that a hearing on the matter was warranted, and ordered the immediate appointment of new counsel for Baptista.  On October 14, 2010, defendant's current counsel, Josh Cohen, was appointed.  Cohen represented Baptista through all subsequent proceedings.

Baptista advanced the following arguments in support of his § 2255 motion: (1) that his retained attorney was inexperienced in federal criminal cases and did not know what he was doing, (2) that Pointer had not provided the available documentary evidence and audio discovery for Baptista's review, thus forcing him to rely on defense counsel's advice to plead guilty without an opportunity to examine the evidence against him, (3) that Pointer had told Baptista to submit letters to the court in order to influence its sentencing decision, (4) that Pointer filed an objection to the presentence report advocating for a downward departure in Baptista's sentence on the basis of his cooperation with law enforcement, and (5) that Pointer represented to defendant that he had some personal relationship with the court in an attempt to assuage Baptista's anxiety about the potential sentence he was facing.  According to Baptista, this conduct by Pointer amounted to ineffective assistance of counsel, because it led defendant to erroneously believe that he could be sentenced to

less than ten years in prison despite the mandatory minimum, thereby rendering his guilty plea involuntary.

After three evidentiary hearings, occurring on November 4, November 17 and December 3, 2010, and supplemental briefing by the parties, the court issued an order granting Baptista's motion to vacate his sentence on February 23, 2011.  The court found that Pointer did initially tell Baptista that he could receive a lower sentence, and that defense counsel represented that his firm had a special relationship with the court.  Even though Pointer may have advised Baptista about the mandatory minimum later, the court held that defendant was "already fixed on the notion that there was still a possibility that he could get a lower sentence."  Dkt. 101 at 14.  The court determined that "Pointer did not ensure that Baptista understood the unavoidable nature of the mandatory minimum sentence," and that defendant believed that "he could conceivably receive a sentence of less than ten years."  Id. at 14-15.  Furthermore, the court found that Pointer's failure to provide discovery to defendant may have contributed to his misunderstanding, because he was not able to appreciate the weight of the evidence and the seriousness of his "predicament."  Id. at 14.  The court also noted that it was "bothered" by a last-minute switch of plea agreements, where the operative agreement was one Baptista did not get a chance to read before signing.  Id. at 15.  Based on the totality of these deficiencies, the court found that Baptista's guilty plea was not voluntarily and intelligently made, and vacated his sentence.  The court ordered the parties to appear for a status conference, where Baptista would be given the opportunity to withdraw his guilty plea, potentially resulting in the reinstatement of all counts contained in the original indictment, or to simply be resentenced.

On March 11, 2011, the government filed a Motion for Clarification of Remedy, arguing that instead of vacating Baptista's sentence, the court should vacate defendant's guilty plea, reinstate the dismissed charges, and give him an opportunity to either enter a knowing and voluntary plea or to proceed to trial.  Dkt. 102.  Baptista did not file an opposition to the government's motion.  At the status hearing on March 16, 2011, the court

agreed with the government, and set aside Baptista's guilty plea, reinstating counts I, II, III and IV. Dkt. 103. Consequently, Baptista was re-arraigned on all four counts contained in the indictment dated January 21, 2010, and remained in custody. Id.

**B.     Amended Judgment and Motion for Writ of Error Audita Querela**

On March 30, 2011, pursuant to a plea agreement, Baptista pled guilty, this time to Count III of the indictment, i.e., conspiracy to distribute and possess with intent to distribute methamphetamine under 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii). Dkt. 104. In the plea agreement, Baptista specifically agreed to "waive any right . . . to file any collateral attack on [his] conviction or sentence, including a petition under 28 U.S.C. § 2255 . . . at any time in the future after [he is] sentenced, except for a claim that [his] constitutional right to the effective assistance of counsel was violated in connection with the negotiation of [the plea] Agreement." Dkt. 105 ¶ 5. The court accepted defendant's plea and sentenced him to the mandatory statutory minimum sentence of 120 months imprisonment and 5 years of supervised release.[1]  On the government's motion, Counts I, II and IV were dismissed. At the same March 30, 2011 hearing, Baptista made an oral motion to be released from custody for a few weeks, which the court denied. An amended judgment reflecting the above-mentioned conviction and corresponding sentence was filed on April 4, 2011. Dkt. 106.

Almost two years after being sentenced, on February 21, 2013, Baptista filed this motion for review of his sentence under writ of error audita querela. The essence of Baptista's argument is that in sentencing him, the court treated the Federal Sentencing Guidelines ("Sentencing Guidelines") as if they were mandatory, rather than advisory,

---

[1] The conspiracy offense charged in Count III of the indictment carries the same penalty as Count IV (the charge to which Baptista pled guilty initially). See Dkt. 6 at 2; see also 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) ("such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life"); 21 U.S.C. § 846 ("Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.").

4

which was an error under United States v. Booker, 543 U.S. 220 (2005).[2]  Mot. at 1-2.  The court treats this motion as it would a habeas petition or a motion to vacate under § 2255 and conducts an initial review to determine whether it presents a cognizable claim for relief and requires a response by the government.

## DISCUSSION

**A.    Motion for Writ of Error Audita Querela**

1.    Legal Standard

"Audita querela, literally 'the complaint having been heard,' is a common law writ used to attack a judgment that was correct when rendered, but that later became incorrect because of circumstances that arose after the judgment was issued."  Carrington v. United States, 503 F.3d 888, 890 n. 2 (9th Cir. 2007).

The writ is available as a federal post-conviction remedy only when some legal defense or discharge arises subsequent to the rendition of the judgment, and may not be the vehicle for vacating a properly obtained conviction on purely equitable grounds.  Doe v. INS, 120 F.3d 200, 203-04 (9th Cir. 1997) (stating that audita querela "is not a wand which may be waved over an otherwise valid criminal conviction").  Like other common law writs, a writ of audita querela is available to fill the gaps of available post-conviction remedies.  United States v. Valdez-Pacheco, 237 F.3d 1077, 1079 (9th Cir. 2001) (per curiam).

As such, a petition for a writ of audita querela is not available if the claims are cognizable in a motion under 28 U.S.C. § 2255, even if filing such a motion would be barred as successive.  Id. at 1080; see, e.g., Carrington, 503 F.3d at 890 (writ of audita querela could not be used to challenge sentence under federal sentencing guidelines based on the Supreme Court's decision in Booker, even though § 2255 motion was no

---

[2] In Booker, the United States Supreme Court held that the provision of the Sentencing Reform Act of 1984 (SRA) that makes the U.S. Sentencing Guidelines mandatory is incompatible with the Sixth Amendment right to trial by jury, and therefore had to be severed and excised from the SRA, making the sentencing guidelines effectively advisory, thereby requiring a sentencing court to consider the guideline ranges but permitting it to tailor a sentence in light of other statutory concerns.  543 U.S. 220 at 249-50.

5

longer available because of statutory bar to second and successive § 2255 motions). "A prisoner may not circumvent valid congressional limitations on collateral attacks by asserting that those very limitations create a gap in the postconviction remedies that must be filled by the common law writs." Valdez-Pacheco, 237 F.3d at 1079. Thus, a writ of error audita querela is only available when (a) the discharge or defense arises after the judgment and (b) all available post-conviction remedies have been exhausted. Id. at 1080.

2.  The Writ of Error Audita Querela Is Unavailable

Baptista asserts that the Supreme Court's decision in Booker established newly created rights, which permit review of his sentence under writ of error pursuant to 28 U.S.C. § 1651. At the base of this argument is defendant's allegation that the court treated the Sentencing Guidelines as mandatory, and not as advisory, in violation of Booker. Mot. at 4. As such, Baptista claims that "the law has completely changed" since his conviction and sentencing, providing him with a new legal defense, which should be given consideration by the court under writ of error audita querela. Id. at 4-5. Baptista further contends that his claims are not cognizable under any other existing scheme of federal post-conviction remedies, and that this court has jurisdiction, as the sentencing court, to review his claims under writ of error. Id. at 2.

Baptista next engages in an elaborate discussion of the historical background and significance of the Supreme Court's Booker ruling. He also presents United States v. Keigue, 318 F.3d 437 (2nd Cir. 2003), as an instructive example of a violation of a defendant's constitutional rights caused by the misapplication of the "expired" Sentencing Guidelines. Mot. at 5. Baptista argues that the case at bar is like Keigue, because the court imposed the sentence "because of its position in the guideline range" under the mistaken belief that the guidelines are mandatory. Id. Baptista further asserts that the court erroneously believed that it could not depart downward from the sentencing guidelines. Id. at 7.

Next, Baptista turns to a discussion of the appropriateness of the writ of error audita querela, in a case such as his, where a change in the law after the defendant's final

judgment has given rise to a new right. Id. Defendant also specifically warns the court against construing the current motion as a second § 2255 motion, for fear that it would be barred as successive, and would therefore preclude consideration of his newly created right, to which he is allegedly entitled as a matter of law. Id. at 10. Baptista also declares that he has a legally enforceable right to a base level sentence of 87 months, and insists that this is "the only sentence authorized by the plea agreement." Id. at 12.

The second part of Baptista's motion attacks the Presentence Report Investigation, and presumably the information contained in the presentence report ("PSR"). Although it is not entirely clear, defendant seems to argue that the PSR, which plays a crucial role in the sentence determination, "has been memorialized with inaccurate facts" because it also relies on a mandatory, rather than advisory, application of the Sentencing Guidelines.[3] Id. at 22.

Based on these allegations, Baptista seeks a correction of the PSR and "the option to be resentenced undre [sic] the advisatory [sic] guidelines appealable under the standard of unreasonableness review." Id. at 23.

Under Ninth Circuit authority, a writ of error audita querela is not available unless (a) there is a legal objection to a conviction, which has arisen subsequent to that conviction, and (b) the legal objection is not redressable pursuant to another post-conviction remedy such as a § 2255 motion. Valdez-Pacheco, 237 F.3d at 1080; Doe v. INS, 120 F.3d at 204.

Baptista's motion fails to raise a legal challenge that arose after the judgment was entered. First, the court notes that the motion is based on the erroneous assertion that the court arrived at Baptista's sentence through a mandatory application of the Sentencing Guidelines, whereas the record shows that the court sentenced him to the mandatory statutory minimum sentence. Baptista's argument appears to confuse the mandatory

---

[3] Most of the remaining discussion in the motion deals with the constitutionality of sentence enhancements, which is irrelevant in this case as the court did not consider or impose any enhancements in sentencing defendant.

minimum sentence under the criminal statute, which the court was required to apply at sentencing, with the recommended guideline range under Sentencing Guidelines, which are merely advisory.  Second, Baptista contends that the Supreme Court's decision in Booker is a change in the law that occurred after his judgment, thereby providing him with the required newly-created legal defense that the court treated the Sentencing Guidelines as mandatory, rather than advisory.  However, Booker was decided in 2005, six years before Baptista's sentence was imposed on May 3, 2011.  As such, the Booker decision was well settled law at the time of Baptista's conviction, thus precluding any assertion that the change in law giving rise to his claim occurred after the judgment.  Because Baptista's argument fails to satisfy this necessary element for a writ of error audita querela, he may not avail himself of this remedy.

Baptista's motion also fails to satisfy the second requirement for seeking a writ of error audita querela because it seeks relief that is available pursuant to 28 U.S.C. § 2255.  As further discussed below, the court may not construe the present motion for writ of error as a § 2255 motion without first informing Baptista of the potential adverse consequences of recharacterizing the motion as a § 2255 motion, that is, that any subsequent § 2255 motion would be subject to the restrictions on second or successive motions. Castro v. United States, 540 U.S. 375, 377 (2003).  Because Baptista's motion seeks post-conviction relief that is available pursuant to § 2255, a writ of error is unavailable as a remedy.  Valdez-Pacheco, 237 F.3d at 1080.

Because the present motion fails to demonstrate both elements that are required to show that a writ of error is available as a federal post-conviction remedy, the motion for writ of error audita querela is DENIED.

**B.    Whether Claim May Be Recharacterized As a Section 2255 Claim**

Having denied Baptista's motion for a writ of error, and being required to construe pro se pleadings liberally, the court must consider whether Baptista's motion for writ of error audita querela may be recharacterized as a motion under § 2255.

1. Legal Standard

Under 28 U.S.C. § 2255, the federal sentencing court is authorized to grant relief if it concludes that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A motion that is in substance a habeas petition "should be treated accordingly." Gonzalez v. Crosby, 545 U.S. 524, 531 (2005) (pleading labeled as a Rule 60(b) motion was construed as a habeas petition)). Thus, an application filed in the sentencing court, and substantively within the scope of § 2255, is a motion under § 2255, regardless of how the prisoner captions the application. United States v. Buenrostro, 638 F.3d 720, 722 (9th Cir. 2011) (citing Gonzalez, 545 U.S. at 531).

However, a court may not recharacterize a pro se litigant's motion as the litigant's first § 2255 motion unless the court informs the litigant of its intent to do so. Castro v. United States, 540 U.S. 375, 377 (2003). As the Ninth Circuit Court of Appeals explained:

> When presented with a pro se motion that could be recharacterized as a 28 U.S.C. § 2255 motion, a district court should not so recharacterize the motion unless: (a) the pro se prisoner, with knowledge of the potential adverse consequences of such a recharacterization, consents or (b) the district court finds that because of the relief sought that the motion should be recharacterized as a 28 U.S.C. § 2255 motion and offers the pro se prisoner the opportunity, after informing the prisoner of the consequences of recharacterization, to withdraw the motion. Under either scenario, the pro se prisoner has the option to withdraw the motion and file one all-inclusive 28 U.S.C. § 2255 motion within the one-year statutory period.

United States v. Seesing, 234 F.3d 456, 464 (9th Cir. 2001). If this is not done, a recharacterized motion will not count as a § 2255 motion for purposes of applying § 2255's "second or successive" provision. Castro, 540 U.S. at 377.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), before a second or successive § 2255 motion is filed, it must be certified by a panel of the appropriate court of appeals to contain "(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and

convincing evidence that no reasonable factfinder would have found the movant guilty of the offense;" or "(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h). If a prisoner seeks to assert a claim that was not presented in his first § 2255 motion, he must move for certification from the court of appeals to file a second or successive motion. Therefore, the district court lacks jurisdiction to consider the second or successive motion unless the prisoner receives certification from the court of appeals. See United States v. Lopez, 577 F.3d 1053, 1056 (9th Cir. 2009) (finding district court did not have jurisdiction and therefore erred in reaching the merits of a newly discovered Brady claim because petitioner failed to first obtain certification from the Ninth Circuit to file a second or successive petition pursuant to § 2255(h)).

However, the AEDPA bar on "second or successive" petitions only applies to challenges to the same judgment. Magwood v. Patterson, 130 S.Ct. 2788, 2769 (2010). See 28 U.S.C. foll. § 2254, Rule 1(b) (court may apply rules to habeas petitions other than petitions filed under § 2254) and Rule 12 (Federal Rules of Civil Procedure apply to habeas actions if not inconsistent with governing statutes and rules). Thus, "'where a first habeas petition results in an amended judgment, a subsequent petition is not successive,'" even if its claims could have been raised in a prior petition or the petitioner "'effectively challenges an unamended component of the judgment.'" Wentzell v. Neven, 674 F.3d 1124, 1127 (9th Cir. 2012) (quoting Johnson v. United States, 623 F.3d 41, 46 (2d Cir. 2010)), cert. denied, 133 S. Ct. 2336 (2013). In Wentzell, the amended judgment left the convictions and sentences on two remaining counts unchanged, and the second § 2254 petition challenged those unaltered components of the judgment, making it clear that the challenge could have been raised in the petitioner's first habeas petition. Id. Nevertheless, the Ninth Circuit agreed with the Second Circuit's conclusion in Johnson that "'[i]n light of Magwood, [courts] must interpret successive applications with respect to the judgment challenged and not with respect to particular components of that judgment.'"

Id. (citation omitted).  Thus, an intervening judgment does not render a subsequent collateral challenge "second or successive."  Id.

2. Analysis

Baptista has clearly expressed his intent that his petition for writ of error not be considered a § 2255 motion, and this determination appears to be based on his belief that such a recharacterized motion would be considered a second or successive § 2255 motion.  Mot. at 10.  Although Baptista has already filed a successful § 2255 motion, which resulted in the court vacating his first sentence and guilty plea, his current motion for relief, if construed as a § 2255 motion, would not be barred as second or successive because the AEDPA restriction against second or successive petitions does not apply to a subsequent petition or motion challenging an amended judgment.  Wentzell, 674 F.3d at 1127.  As in Wentzell, Baptista was resentenced, resulting in an amended judgment.  Consequently, regardless of whether Baptista's claims could have been raised in his previous § 2255 motion, his current motion, if construed as a § 2255 motion, would not be a second or successive collateral challenge under AEDPA.  Id.

Although the current motion recharacterized, or a new motion for that matter, would not be considered a second or successive challenge, it would confront two additional hurdles that would have to be overcome before the court could address the merits.  First, by entering the plea agreement, Baptista waived his right to file a § 2255 motion or other collateral challenge to his conviction or sentence.  Dkt. 105 ¶ 5.  However, Baptista's motion directly challenges the sentence based on his argument that the court improperly treated the Sentencing Guidelines as mandatory, not as advisory, in violation of Booker.  The motion challenging his sentence therefore appears to be barred by the plea agreement.

Second, a motion to vacate, set aside or correct a federal sentence under § 2255 must be filed within one year of the latest of the date on which: (1) the judgment of conviction became final; (2) an impediment to making a motion created by governmental

action was removed, if such action prevented petitioner from making a motion; (3) the right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.  28 U.S.C. § 2255(f).  In appropriate circumstances, the statute of limitations in § 2255 may be subject to equitable tolling.  United States v. Battles, 362 F.3d 1195, 1196 (9th Cir. 2004).  See United States v. Buckles, 647 F.3d 883, 891-93 (9th Cir. 2011) (remanding to district court to determine whether allegation that court clerk gave petitioner erroneous advice warranted equitable tolling); Battles, 362 F.3d at 1197-98 (remanding to district court to determine whether trial counsel's failure to provide petitioner with transcript warranted equitable tolling).

Judgment was entered against Baptista on March 30, 2011, and he filed the current motion on February 21, 2013, well beyond the one-year limitations period.  If Baptista seeks relief under the procedures established in Castro and Seesing, he must set forth facts to show that he is entitled to equitable tolling of the one-year limitation period, or the claims may be barred as untimely.  Additionally, because the plea agreement contains a waiver of Baptista's right to bring a § 2255 motion, Baptista must also demonstrate why he is not bound by the plea agreement.

**NOTICE**

The court may not recharacterize a pro se litigant's motion as a first § 2255 motion unless either the pro se prisoner consents, with knowledge of the restrictions on second or successive motions, or the court offers the pro se prisoner the opportunity, after informing the prisoner of the consequences of recharacterization, to withdraw the motion or to amend it so that it contains all the § 2255 claims he believes he has.  Castro, 540 U.S. at 383; Seesing, 234 F.3d at 464.  "Under either scenario, the pro se prisoner has the option to withdraw the motion and file one all-inclusive 28 U.S.C. § 2255 motion within the one-year statutory period."  Seesing, 234 F.3d at 464.

Under Castro and Seesing, the court **HEREBY NOTIFIES** Baptista that in order for the court to consider his claim for relief, he must either file a statement consenting to the recharacterization of his petition for writ of error as a motion for habeas relief under § 2255, or withdraw the instant motion and file a motion bringing all claims for relief pursuant to § 2255 in a single, all-inclusive motion. Failure to assert all of the grounds for relief in a single motion may preclude Baptista from asserting other grounds in a second or successive § 2255 motion.

**CONCLUSION**

For the foregoing reasons and good cause shown:

1. Defendant's motion for writ of error audita querela is DENIED.

2. In order for the motion for writ of error to be recharacterized as a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, defendant must either (a) file a statement indicating his consent to recharacterizing his motion as a § 2255 motion, or (b) withdraw the present motion and file a single, all-inclusive § 2255 motion that asserts all his claims for collateral relief and sets forth facts demonstrating why the motion is (1) not untimely and (2) not barred by the plea agreement.

If defendant consents to recharacterization of the motion for writ of error as a § 2255 motion, defendant shall notify the court within 30 days of the date of this order. If within thirty days of the date of this order, the court has heard nothing from defendant, the file on this motion will be closed.

If defendant instead wishes to file a new § 2255 motion which also addresses the timeliness and plea agreement issues identified by the court, defendant may file it at any time. However, the longer he waits the more untimely it will be.

**IT IS SO ORDERED.**

Dated: August 5, 2013

PHYLLIS J. HAMILTON
United States District Judge